IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DANIEL KNAPP,

     Plaintiff,

     v.

HARTFORD LIFE AND
ACCIDENT INSURANCE COMPANY,

     Defendant.

Case No. 2:09-cv-414
Judge Sargus
Magistrate Judge Deavers

## OPINION AND ORDER

This matter is before the Court on the Parties' cross-motions for judgment on the

administrative record. (Docs. 10 & 11.) For the reasons that follow, both motions are **DENIED**,

and the Court remands Plaintiff's claims to Defendant for further consideration consistent with

this Opinion and Order.

## I.

Plaintiff Daniel Knapp ("Knapp") brings the instant action against Defendant Hartford

Life Insurance Company ("Hartford")[1] pursuant to the Employee Retirement Income Security Act

of 1974, 28 U.S.C. § 1001 *et seq.* ("ERISA"), claiming to have been improperly denied short-

term and long-term disability benefits owed to him under his employer's disability plans.

## A.

Knapp was employed by Equity One, a subsidiary of Banco Popular North America, and,

---

[1] Hartford maintains that it is incorrectly named "Hartford Life and Accident Insurance
Company" in the caption to this lawsuit.

by virtue of that employment, was a participant in that company's short and long-term disability plans, which are administered by Hartford. During Knapp's employment with Equity One, which lasted from April 2005 through November 2007, he held the positions of Regional Vice President of Sales, Senior Vice President of Sales, and was later returned to the position of Regional Vice President of Sales. (Administrative Record ("R.") 662.) The Regional Vice President of Sales position required him to manage eight branch offices in Ohio and Kentucky, which necessitated frequent travel. (R. 662.) According to Knapp, he traveled more than three days per week, and spent ten to twenty hours weekly simply traveling from office to office. (R. 662.)

Knapp has had a long, documented history of lower-back health problems. In 1999, he had surgery to remove part of a herniated disk. (R. 663.) In November 2004, Knapp visited Dr. Dennis Flynn, his family doctor, complaining of back pain that had persisted for about two weeks. (R. 466.) One week later, Knapp indicated to Flynn that the pain was getting worse and Flynn ordered an MRI of Knapp's lumbar spine. (R. 465.) The MRI revealed severe spinal canal stenosis[2] at the L4-L5 level, mild degenerative disc disease at the L3-L4 level, and moderate degenerative disc disease and mild spinal canal stenosis at the L2-L3 level. (R. 473–74.) As a result of the MRI findings, Dr. Flynn prescribed cortisone injections. (*See* R. 472.) In October 2005, Knapp was seen by spinal surgeon Dr. Gary Rea upon referral from Dr. Flynn. (R. 568.) Knapp and Dr. Rea discussed surgical options, and Dr. Rea ordered another MRI. (R. 569.) Upon reviewing the MRI, Dr. Rea sent a letter to Knapp stating "[i]t looks like to me you either

---

[2] Dorland's Illustrated Medical Dictionary defines "spinal stenosis" as "narrowing of the vertebral canal, nerve root canals, or inter-vertebral foramina of the lumbar spine . . . ; symptoms . . . include pain . . . . DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1795 (31st ed. 2007).

2

have recurrent disk or you have scar tissue there at L4-L5. It looks like this is pretty severe." (R. 570.) In the letter, Dr. Rea also indicated that he did not believe that epidural steroids would be effective because Knapp's problems were "due to the nerves being squeezed not due to the [type of] inflammation that epidural steroids often help." (R. 570.) Dr. Rea also discussed surgical options in detail. (*See* R. 570–71.)

For a time, Knapp's condition apparently improved before again worsening in the spring of 2006, when Knapp reported to Dr. Rea that he was experiencing radiating pain extending down his left leg, accompanied by weakness in his left leg. (*See* R. 565.) Knapp was then referred by Dr. Flynn to Dr. Gordon Korby, a pain management specialist. (*See* R. 545–47.) Dr. Korby agreed with Dr. Rea that surgery was likely Knapp's best option to relieve his pain. (R. 548.) In April 2006, Dr. Rea performed a "lumbar decompression fusion fixation" on Knapp, and by June of that year, Knapp was doing "quite well," with "no pain in his back or down his legs." (R. 563.) In July 2006, Dr. Rea reported to Dr. Flynn that Knapp was still doing "exceptionally well" with only minimal pain in his back. (R. 562.) However, Dr. Rea also reported that Knapp was experiencing numbness and tingling in his left foot. (R. 562.)

In June of 2007, Knapp complained to Dr. Flynn of swelling in his left foot. (R. 457.) In July of 2007, Dr. Flynn noted that Knapp was experiencing pain every four to five minutes, with the level of pain becoming progressively worse. (R. 456.) At this time, Dr. Flynn noted that Knapp's left leg was measurably smaller than his right. (R. 456.) Another MRI was performed, and interpreting physician Dr. Robert L. Miller noted "severe acquired central canal stenosis at L2-3," "moderate acquired central canal stenosis at L3-4," and "[d]egenerative disk disease at L2-3 and L4-S1." (R. 632.)

3

In August 2007, Dr. Korby prescribed Ultram and Lyrica. (R. 529.) On August 17, 2007, Dr. Flynn noted continued weakness and atrophy in Knapp's left leg, and that Knapp was having problems walking and riding in cars. (R. 455.) Knapp discontinued working at Equity One as of November 27, 2007. (R. 663.) On November 28, 2007, Dr. Shelley Boone, an associate of Dr. Korby, performed an EMG nerve conduction study on Knapp that revealed "chronic left L-5 and S-1 radiculopathies."[3] (R. 544.) Dr. Boone also discussed referring Knapp to physical therapy. (R. 544.) Knapp underwent physical therapy with Kyle Ross starting in December 2007. (*See* R. 559.) However, after seven sessions, Ross reported "[t]he patient continues to demonstrate lack of progress with physical therapy . . . . Given his limited abilities to perform his home exercise program I have suggested discharge from physical therapy." (R. 533.) In March 2008, Dr. Boone prescribed a new series of epidural injections. (R. 524.) In April 2008, Knapp again consulted Dr. Rea, who discussed further surgical options, but indicated that surgery would probably not alleviate all of Knapp's pain. (R. 581–82.) In September 2008, Dr. Korby prescribed Vicodin to replace the Ultram that Knapp had previously been taking because the Ultram was losing its effectiveness. (R. 518.)

**B.**

In late November 2007, Knapp applied for short-term disability benefits through his employer's plan. As defined in the plan, the term "Disabled" meant "Total Disability" or "Disabled and Working Disability." (R. 47.) "Total Disability" was defined to mean "You [(i.e. the covered employee)] are prevented by: 1) injury; [or] sickness . . . from performing the

---

[3] "Radiculopathy" is a "disease of the nerve roots." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1595 (31st ed. 2007).

4

Essential Duties of Your Occupation, and as a result, You are earning less than 20% of Your Pre-

disability Earnings." (R. 49.) The term "Your Occupation" was defined by the short-term

disability plan to mean "Your Occupation as it is recognized in the general workplace" not "the

specific job You are performing for a specific employer or at a specific location." (R. 49.)

Finally, the term "Essential Duty" was defined by the plan to mean "a duty that: 1) is substantial,

not incidental; 2) is fundamental or inherent to the occupation; and 3) cannot be reasonably

omitted or changed" and includes the "ability to work the number of hours in Your regularly

scheduled work week." (R. 47.)

Knapp's claim for short-term disability benefits was initially approved on December 24,

2007. (R. 728.) On February 8, 2008, Stacy Eremchuk, a medical case manager for Hartford,

sent a letter to Dr. Flynn asking him to describe Knapp's condition. (R. 718.) Dr. Flynn

described "[i]ncreased leg weakness and pain with leg atrophy and failure to respond to

attempted medical therapies." (R. 716.) On March 6, 2008, the short-term disability benefits

were discontinued. (R. 686.) Timothy Hicks, Senior Ability Analyst for Hartford, concluded:

> The medical information received on your claim advised that you were treated for
> chronic lumbosacral radiculopathy. Your symptoms were reported as back pain
> and weakness/numbness of your left leg. Your restrictions were noted as no
> lifting over 10 pounds, no bending, no kneeling, and occasional driving. Dr.
> Flynn states that these restrictions are permanent. The physical therapy notes
> received on 02/18/2008, state that you were experiencing chronic low back pain
> and left L5 and S1 lumbar radiculopathy. It was noted that there was some mild
> tenderness over the lower lumbar paraspinals and that you were ambulating well
> without any assistive device. Your claim was approved for benefits through
> 01/27/2008. On 02/08/208, our Clinical Case Manager faxed a letter to Dr.
> Flynn's office to clarify the severity of your condition and your functionality. On
> 02/13/2008, Dr. Flynn's office requested our Clinical Case Manager to refax the
> letter to their office. On 02/15/2008, Dr. Flynn responded noting you have
> increased leg weakness and pain with leg atrophy. However, there were no
> significant exam findings or diagnostics provided to support the continued

severity of your condition. The information provided does not substantiate the presence of a functional impairment that would prevent you from being able to perform the essential duties of your occupation beyond 01/27/2008. Therefore, we are denying further benefits.

(R. 686–87.)

On May 20, 2008, Knapp appealed the denial of short-term disability benefits. (R. 656.) With his appeal, Knapp submitted a letter from his attorney explaining the basis for the appeal; an affidavit describing his limitations; a statement of functionality completed by Dr. Flynn listing Knapp's diagnoses as "chronic lumbosacral radiculopathy," "spinal stenosis," and "degenerative arthritis/disease of lumbar spine," and opining that Knapp's conditions restricted him to lifting ten pounds or less, only occasional driving, and sitting, standing, and walking for only twenty minutes at a time up to one hour per day for each; a statement of continuing disability signed by Dr. Flynn; an April 18, 2008 letter from Dr. Rea to Dr. Flynn indicating that surgery would likely not be successful in alleviating Knapp's pain; photographs of Knapp's legs; a letter from Dr. Boone describing her treatment of Knapp; a letter from Dr. Korby, dated April 2, 2008, indicating that Knapp was discontinuing physical therapy due to significant nerve damage; and articles describing the Ultram ER prescribed to Knapp. (*See* R. 656–77.)

Knapp's file was submitted by Hartford to Dr. Bruce LeForce, who is board certified in Neurology and Clinical Neurophysiology, for an independent review of Knapp's medical records. (*See* R. 641.) In a brief report, Dr. LeForce concluded that Knapp's "condition would not prevent him from performing a sedentary occupation which also involves traveling by automobile or airplane two to three days per week for several hours per day" and that there was no evidence that side-effects from Knapp's medication would prevent him from concentrating.

6

(R. 642.) When asked to provide his opinion of Knapp's functionality, LeForce opined that "[t]he claimant has impairment on the basis of his previous lumbar surgery, ongoing pain syndrome, and disc changes noted on MRI. The claimant is capable of full time work. The claimant can sit up to eight hours per day." (R. 643.)

By letter dated June 25, 2008, Hartford denied Knapp's short-term disability benefit appeal. (R. 638.) In the letter, Appeal Specialist Joanne Wyzykowski described Knapp's job responsibilities and stated that Knapp "is responsible for seven branch locations in Ohio and Kentucky, and is required to travel two to three days a week. This occupation is considered sedentary in physical demands." (R. 639.) Wyzykowski then described Dr. LeForce's findings, and concluded that

> the combined information in Mr. Knapp's file supports that he has limitations associated with his surgical history, pain symptoms and radiculopathy. However, we have also determined that the evidence does not support that Mr. Knapp is precluded from performing a sedentary occupation which also requires travel by automobile or airplane two to three days a week. In addition, there is no evidence of cognitive impairment. Therefore, we have determined that Mr. Knapp is capable of performing the Essential Duties of his own occupation and does not meet the policy definition of Total Disability.

(R. 640.)

Following denial of his short-term disability benefit appeal, in October 2008, Knapp applied for long-term disability benefits under his former employer's plan. Pursuant to the long-term disability plan, an employee was considered disabled if "You [(i.e. the covered employee)] are prevented from performing one or more of the Essential Duties of: 1) Your Occupation during the Elimination Period; 2) Your Occupation, for the 24 month(s) following the Elimination Period, and as a result Your Current Monthly Earnings are less than 80% of Your

7

Indexed Pre-disability Earnings; and 3) after that, Any Occupation." (R. 17.) The plan contained an elimination period of 180 days. (R. 7) The long-term disability plan's definitions of "Essential Duty" and "Your Occupation" were identical to those in the short-term disability plan. (*See* R. 18, 20.)

In his application for long-term disability benefits, Knapp included a form completed by Dr. Flynn that stated that Knapp's conditions limited him to standing for only ten minutes at a time, for up to one hour per day; limited him to walking only five minutes at a time, for up to thirty minutes daily; limited him to sitting for only ten minutes at a time, for up to one hour per day; and limited him to driving for only ten to fifteen minutes maximum. (R. 630.) Dr. Flynn also stated that Knapp's limitations would be lifelong. (R. 630.) By letter dated October 23, 2008, Hartford denied Knapp's application for long-term disability benefits, concluding that Knapp's evidence did not support a finding that he was disabled during the 180-day elimination period. (R. 611.) Ability Analyst Lucy Brown stated that the decision to deny long-term disability benefits was based on a review of Knapp's application, the statement by Dr. Flynn, medical records received from Flynn and Dr. Korby, and Dr. LeForce's report. (R. 612.) According to Brown, Dr. LeForce's opinion indicated that Knapp was able to perform the essential duties of his occupation during the elimination period. (R. 613.) Therefore, Knapp was not disabled within the meaning of the long-term disability plan. (*See* R. 613.)

In February 2009, Knapp initiated an appeal of the denial by Hartford of long-term disability benefits. (R. 439.) Knapp included with his appeal a Functional Capacity Evaluation ("FCE") report by occupational therapist Jana Edington. (R. 585.) Edington's report described Knapp's physical effort during the evaluation as follows:

> Overall Test findings, in combination with clinical observations, suggest the
> presence of good effort on Mr. Knapp's behalf.  In describing sub-maximal effort,
> this evaluator is by no means implying intent.  Rather, it is simply stated that Mr.
> Knapp can do more physically at times than was demonstrated during this testing
> day.  Any final vocational or rehabilitation decisions for Mr. Knapp should be
> made with this in mind.

(R. 585.)  Edington compared Knapp's physical abilities with the requirements for the Dictionary

of Occupational Titles job description for the position of Sales Representative in Financial

Services, and concluded that Knapp did "not meet the majority of the essential job task criteria,

and therefore does not appear to be appropriate for gainful employment in this field."  (R. 586.)

Dr. Sharron Thompson, who is board certified in physical medicine and rehabilitation and

Dr. Robert Pick, a board-certified orthopedic surgeon, conducted reviews of Knapp's appeal on

behalf of Hartford.  (*See* R. 341, 352.)  Drs. Thompson and Pick are both employed by an

organization called University Disability Consortium.  (*See* R. 329, 342.)  In addition to

reviewing Knapp's medical records, Dr. Thompson also spoke with Drs. Flynn and Korby, as

well as Dr. Bernard Miller, an associate of Dr. Korby, and Dr. Pick concerning Knapp's case.

(R. 337–38.)  Dr. Thompson opined that Knapp's "subjective complaints are supported by the

significant findings on MRI scan, the physical examination findings with altered sensations,

weakness and atrophy in the lower extremities.  His condition is progressive and improvement, in

my opinion, is not expected."  (R. 339.)  Thompson further opined that Knapp should be limited

to standing or sitting for a maximum of thirty minutes, with the option of changing positions as

needed, and walking for fifteen minutes.  (R. 339.)  However, Thompson concluded that Knapp

"would not be precluded from sustained full time work for the dates in question, eight hours per

day, 40 hours per week, but only at the sedentary level [sic] DOT level and not beyond that level

and with the ability to change positions as needed." (R. 341.)

Dr. Pick also spoke with Dr. Flynn, in addition to reviewing Knapp's medical records. (R. 349.) Dr. Pick concluded that "[a]lthough the records describe objective findings on examination - including muscle mass girth asymmetries . . . , along with description of an absent left ankle reflex . . . , overall, the objective information reviewed does not rise to a condition, which would validate complete impairment from full-time gainful employment, at least in the sedentary category." (R. 350.) Pick further concluded that Knapp could sit for at least an hour at a time and thus could drive or ride in airplanes for that duration before needing to stand up, and "to a reasonable degree of medical certainty, that Mr. Knapp has the capacity for sustained full-time work in at least the sedentary category." (R. 350–52.)

By letter dated April 7, 2009, Hartford denied Knapp's long-term disability benefit appeal. (R. 294.) In the letter, Appeals Specialist Genie Guthrie noted that the FCE performed by Edington compared Knapp's physical abilities with those required to perform the Dictionary of Occupational Titles position of Sales Representative in Financial Services, a position with light physical demands. (R. 295.) An occupational analysis report completed by Hartford indicated that Knapp's position was more analogous to the Dictionary of Occupational Titles' position of Sales Manager, a job-description with sedentary physical demands. (R. 296.) Guthrie also relied on the reports of Drs. Pick, Thompson, and LeForce in concluding that Knapp had failed to establish that he was disabled within the terms of the long-term disability policy throughout the elimination period. (*See* R. 298–300.)

Upon denial of his appeal, Knapp initiated the instant litigation pursuant to ERISA. The parties now both move for judgement on the administrative record.

10

**II.**

Courts review challenges to benefits determinations under ERISA-covered plans using the *de novo* standard of review unless the terms of the plans themselves vest the plan administrators with discretion in awarding benefits or interpreting the plans. *Univ. Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 845 (6th Cir. 2000). If discretion is vested in the plan administrators, benefit determinations are reviewed under an arbitrary and capricious standard. *Id.* Here, the Parties agree that the proper standard of review is the arbitrary and capricious standard.

The arbitrary and capricious standard "is the least demanding form of judicial review of administrative action.[]  When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Perry v. United Food and Commercial Workers Dist. Unions 405 and 442*, 64 F.3d 238, 242 (6th Cir. 1995)(quoting *Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989)). The benefit determination of a plan administrator should thus be upheld "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Baker v. United Mine Workers of Am. Health and Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991).

"While the arbitrary and capricious standard is deferential, it is not, however, without some teeth." *Evans v. UnumProvident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006)(internal quotations omitted). District courts are not to serve as mere rubber stamps for the decisions of plan administrators and "[t]he obligation under ERISA to review the administrative record in order to determine whether the plan administrator acted arbitrarily and capriciously inherently includes some review of the quality and quantity of the medical evidence and the opinions on

11

both sides of the issues." *Id.* (internal quotations omitted). Furthermore, in situations where plan administrators also are responsible for paying plan benefits, as in this case, the Supreme Court has held that a conflict of interest is created that can be considered as a factor in courts' reviews of administrator decisions. *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2346 (2008).

## III.

Here, Knapp contends that Hartford's decisions denying short-term and long-term disability benefits were arbitrary and capricious on the grounds that Hartford ignored evidence submitted by Knapp, including the FCE, records from Knapp's physicians, and his own statements, and that Hartford's reliance on a file review was unreasonable. Hartford responds by asserting that its decisions were well-reasoned, having taken Knapp's evidence under due consideration, and that a file review as opposed to an examination of Knapp by Hartford doctors was reasonable. For the reasons stated below, the Court finds that Hartford's decisions denying both short and long-term disability benefits to Knapp were arbitrary and capricious. Because the record does not clearly establish that Knapp would be entitled to benefits, the Court remands Knapp's case to Hartford for reconsideration consistent with this Opinion and Order.

On at least four separate occasions, Dr. Flynn, who had treated Knapp for several years, submitted reports to Hartford wherein he opined that Knapp was extremely limited in his ability to stand, sit, and walk. In a document titled "Attending Physician's Statement of Functionality" dated December 4, 2007, Flynn stated that Knapp could sit for only one-half hour at a time, up to a maximum of two hours per day; that Knapp could stand for only one-fourth of an hour at a time, up to a maximum of one hour per day; and that Knapp could walk for only one-eighth of an hour at a time, up to a maximum of one-half hour per day. (R. 758.) In a document titled

12

"Attending Physician's Statement of Continued Disability" dated January 3, 2008, Flynn stated

that Knapp could only sit or stand for one-half hour at a time. (R. 726.) In a statement of

functionality dated January 29, 2008, Flynn stated that Knapp was limited to standing, sitting,

and/or walking for only one-third of an hour continuously with a cumulative daily maximum of

only one hour for each activity. (R. 666.) Finally, in the "Attending Physician's Statement of

Disability" accompanying Knapp's application for long-term disability benefits and dated

September 25, 2008, Flynn stated that Knapp could stand and sit for only ten minutes at a time,

with a maximum cumulative total of one hour per day for each activity and that Knapp could

walk for five minutes at a time and up to only thirty minutes daily. (R. 630.)

The Supreme Court has held that "plan administrators are not obliged to accord special

deference to the opinions of treating physicians." *Black & Decker Disability Plan v. Nord*, 538

U.S. 822, 825 (2003). Additionally, plan administrators are generally entitled to rely on the

opinion of one doctor over that of another in determining whether benefits should be awarded.

*Evans*, 434 F.3d at 877. However, "[p]lan administrators . . . may not arbitrarily refuse to credit

a claimant's reliable evidence, including the opinions of a treating physician." *Black & Decker*,

538 U.S. at 834. In the instant case, in both the short-term and long-term disability contexts,

Hartford acted arbitrarily and capriciously in not offering reasoned explanations as to why it

discounted Dr. Flynn's findings that Knapp was substantially limited in his ability to sit, stand,

and walk.

Hartford characterized the nature of Knapp's work as sedentary. (*See* R. 296, 639.)

However, the record reflects that even a job with sedentary physical demands would still require

sitting for extended periods of time. Hartford's internal files conclude that a sedentary job would

13

require "continuous sitting." (R. 234.) Moreover, in Knapp's application for long-term disability

benefits, the form completed by Knapp's former employer's human resources coordinator states

that Knapp's position required continuous sitting and frequent walking. (R. 618.) Even

assuming that a job such as Knapp's, which requires frequent travel, could accurately be

categorized as sedentary, an individual with the severe limitations documented by Dr. Flynn

would be unable to perform the job. For instance, the form completed by Dr. Flynn as part of

Knapp's long-term disability benefit application states that Knapp could only sit, stand, and walk

for a combined two and one-half hours per day. (*See* R. 630.) Given that employees are usually

required to work at least eight-hour days, this leaves five and one-hours when Knapp would be

unable to sit, stand, or walk.

        As stated above, Hartford was free to accept the opinions of other doctors over those of

Flynn, but was not free to disregard Flynn's opinions without a reasoned explanation. Hartford

failed to address why Flynn's opinions were not credible. A review of Joanne Wyzykowski's

letter of June 25, 2008 denying Knapp's short-term disability appeal indicates that Wyzykowski

relied heavily on the opinion of independent reviewer Dr. LeForce. (*See* R. 638–40.) LeForce's

report admitted that Knapp had "impairment on the basis of his previous surgery, ongoing pain,

and evidence of radiculopathy" but concluded that Knapp could sit for up to eight hours per day

and was capable of full time work. (R. 643.) However, nowhere in LeForce's report does it

explain how he concluded that Knapp could sit for eight hours per day, or why Flynn's

assessment was incorrect. Similarly, nowhere in Wyzykowski's decision did she explain why

LeForce's conclusions were acceptable over Flynn's. Given the wide gulf between the opinions

of Flynn and LeForce (sitting up to two hours per day versus eight hours per day), Hartford

abused its discretion in not explaining why Flynn's conclusions should be discredited.

Genie Guthrie's letter of April 7, 2009 denying Knapp's long-term disability appeal relied on the opinions of LeForce, Thompson, and Pick in concluding that Knapp was capable of performing sedentary work during the elimination period. (*See* R. 294–300.) Dr. Thompson reviewed Knapp's medical records and spoke with Drs. Flynn, Korby, and Miller, and concluded that Knapp could work forty hours per week in a sedentary job if he were given the ability to change positions as needed. (R. 341.) However, before reaching her ultimate conclusion, Thompson agreed that Knapp's "subjective complaints [were] supported by significant findings on MRI scan, the physical examination findings with altered sensations, weakness and atrophy in the lower extremities." (R. 339.) Thompson also reviewed the attending physician's functionality statements completed by Flynn on December 4, 2007 and January 29, 2008, (R. 333), and later reached her own conclusion that Knapp could sit or stand for up to thirty minutes, and walk for fifteen minutes. (R. 339.) In reaching this conclusion, however, Thompson did not address the cumulative daily limitations that Flynn had described in the functionality statements, nor offer any explanation as to either why these daily limitations were incorrect or how Knapp would be able to perform sedentary work given the limitations.

Similarly, Dr. Pick reviewed Knapp's medical records, spoke with Dr. Flynn, and concluded that "the objective information reviewed does not rise to a condition, which would validate complete impairment from full-time gainful employment, at least in the sedentary category." (R. 350.) Pick concluded that Knapp could sit for one hour at a time, which would allow Knapp to travel, but, as with Dr. Thompson, did not address why he discredited Dr. Flynn's assessment in reaching this conclusion. (R. 351.)

15

As stated above, Genie Guthrie relied heavily on the opinions of Pick, Thompson, and LeForce in denying Knapp's long-term disability benefit appeal. None of the Doctors, nor Guthrie herself, however, addressed Flynn's opinions that Knapp could cumulatively sit, stand, and walk for only a limited portion of the day. Accordingly, in ignoring the opinions of Flynn, Hartford did not offer a reasoned explanation with regard to its denial of Knapp's long-term disability claim and thus acted in an arbitrary and capricious manner. *See, e.g., Moon v. Unum Provident Corp.*, 405 F.3d 373, 382 (6th Cir. 2005)(finding denial of benefits to be arbitrary and capricious when decision was based on "a selective review of the administrative record").

Knapp also asserts that it was unreasonable for Hartford to conduct reviews of his claims based solely on his medical records when it had the right to have him examined by a physician. As the Sixth Circuit has noted, "there is nothing inherently improper with relying on a file review, even one that disagrees with the conclusions of a treating physician." *Calvert v. Firstar Finance, Inc.*, 409 F.3d 286, 297 n.6 (6th Cir. 2005). In the long-term disability context, the record indicates that Hartford considered the issue on appeal to be whether Knapp was disabled during the elimination period, which it identified as the 180 days between November 27, 2007 and May 25, 2008. (R. 235.) An entry in Hartford's records indicates that because that time period had already passed, Hartford did not believe that an independent medical examination or another FCE would be helpful. (R. 235.) It was not unreasonable to forgo an independent examination when considering Knapp's capabilities during time periods that had already passed, such as within the short-term disability context or for the elimination period within the long-term disability context. The Court notes, however, that the definition of disability within the long-term plan has forward-looking components, (see R. 17), and, given the disparity between the

16

assessments of Knapp's physicians and Hartford's, an examination of Knapp would have been an appropriate step in this case. *See Calvert*, 409 F.3d at 297 n.6 ("Where . . . the conclusions from [a file] review include critical credibility determinations regarding a claimant's medical history and *symptomology*, reliance on such a review may be inadequate." (emphasis supplied)).

Finally, Knapp argues that Hartford unreasonably ignored the findings of the FCE conducted by Jana Edington. However, Hartford's records note that the FCE had been conducted seven months after the designated elimination period had passed. (R. 235.) Additionally, in her letter denying long-term benefits, Guthrie included a discussion of Hartford's concerns with the FCE, including that the FCE evaluated Knapp for a light as opposed to sedentary job, and that the FCE did not address whether Knapp would be suitable for employment in a sedentary position. (*See* R. 295–96.) Accordingly, Hartford did not ignore the FCE. However, on remand, the FCE, especially those sections detailing specific tests of Knapp's physical capabilities, should be taken under consideration by Hartford in any evaluation of Knapp's disability status in the time frame after the elimination period.

## IV.

Hartford acted arbitrarily and capriciously in denying Knapp's claims for short-term and long-term disability benefits. The process described *infra* was flawed. This claim should be reevaluated in accordance with the law and a new decision rendered following proper consideration of the evidence. Accordingly, remand to Hartford for further consideration of Knapp's claims consistent with this Opinion and Order is an appropriate remedy in this case. *See Helfman v. GE Group Life Assurance Co.*, 573 F.3d 383, 396 (6th Cir. 2009).

**V.**

For the reasons set forth above, the Parties' motions for judgment on the administrative record (Docs. 10 & 11) are **DENIED**, and the claims at issue herein are remanded to Defendant. This case is dismissed and the Clerk is directed to enter judgment in accordance with this Opinion and Order.

**IT IS SO ORDERED.**

9-23-2010
_____          _____
**DATED**                       **EDMUND A. SARGUS, JR.**
                                **UNITED STATES DISTRICT JUDGE**

18